```
                    ✓ FILED          ___ RECEIVED
                    ___ ENTERED      ___ SERVED ON
                                     COUNSEL/PARTIES OF RECORD

                         OCT 3 1 2013

                      CLERK US DISTRICT COURT
                       DISTRICT OF NEVADA
                    BY:_____ DEPUTY
```

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | 3:08-cr-0106-LRH-RAM |
| v. ) | ORDER |
| TANDY ANNE KERTANIS, ) | |
| Defendant. ) | |

Before the court is defendant Tandy Anne Kertanis's ("Kertanis") amended motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. Doc. #114.[1] The United States filed an opposition to the motion (Doc. #125) to which Kertanis replied (Doc. #126).

### I. Facts and Procedural History

On November 19, 2008, Kertanis was indicted on charges relating to bank fraud. *See* Doc. #1. On June 24, 2009, a superseding indictment was filed against Kertanis charging her with one count of bank fraud in violation of 18 U.S.C. §§ 1344(1) and (2); four counts of aggravated identity theft in violation of 18 U.S.C. § 1028A; two counts of money laundering in violation of 18 U.S.C. § 1957; one count of access device fraud in violation of 18 U.S.C. § 1029(a)(2); and one count of committing an offense while on release in violation of 18 U.S.C. § 3147(1). Doc. #19.

---

[1] Refers to the court's docket number.

On August 20, 2012, Kertanis pled guilty to Count 2 of the indictment for aggravated identify theft in violation of 18 U.S.C. § 1028A and Count 5 of the indictment for money laundering in violation of 18 U.S.C. § 1957. *See* Doc. #64. Subsequently, on April 11, 2013, Kertanis was sentenced to fifty-seven (57) months for Count 5 and a consecutive twenty-four (24) months for Count 2 for a total sentence of eighty-one (81) months incarceration. *See* Doc. #88. Kertanis did not appeal her sentence.

On May 30, 2013, Kertanis filed a motion to vacate under 28 U.S.C. § 2255. Doc. #93. On July 17, 2013, Kertanis filed a motion to amend her motion to vacate (Doc. #113) which was granted by the court. Thereafter, Kertanis filed the present amended motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. Doc. #114.

## II. Discussion

Pursuant to 28 U.S.C. § 2255, a prisoner may move the court to vacate, set aside, or correct a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255; 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 41.3b (5th ed. 2005).

The Sixth Amendment to the Constitution provides that criminal defendants "shall enjoy the right to have the assistance of counsel for his defense." U.S. CONST. AMEND. VI. To establish ineffective assistance of counsel, a petitioner must show that his or her counsel's performance was deficient, and that petitioner was prejudiced as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In determining whether counsel's performance was deficient, the court must examine counsel's overall performance, both before and at trial, and must be highly deferential to the attorney's judgments." *Quintero-Barraza*, 78 F.3d at 1348 (citing *Strickland*, 466 U.S. at 688-89) (internal quotations omitted). Once a petitioner has established that counsel's performance was deficient, the petitioner "must then establish that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In her motion for relief under § 2255, Kertanis contends that her counsel[2] was constitutionally ineffective throughout the underlying proceedings for four separate reasons: (1) counsel failed to challenge the amount of loss calculation at sentencing; (2) counsel failed to submit certified medical records relating to the medical condition of her son, Cameron, at sentencing; (3) counsel failed to file a motion to dismiss for lack of venue; and (4) counsel failed to seek an acceptance of responsibility reduction. *See* Doc. #114. Additionally, Kertanis contends that she did not make a knowing and voluntary guilty plea to Count 2 for aggravated identify theft. *Id.* The court shall address each challenge below.

**A. Amount of Loss Challenge**

In her motion for post-conviction relief, Kertanis claims that Attorney Cameron - the attorney who filed her sentencing memorandum - and Attorney Molezzo - her attorney at sentencing - were constitutionally ineffective for failing to object to the presentence report's, and ultimately the court's, amount of loss calculation.[3]

In the presentence report, the amount of loss suffered by Wells Fargo, the victim of the bank fraud, was found to be $228,000, the amount of the loan not repaid at the time Wells Fargo discovered the fraud. As such, a twelve (12) level enhancement was added to Kertanis's sentencing guideline calculation pursuant to §2B1.1(b)(1)(G) of the sentencing guidelines. *See* U.S.S.G.

---

[2] At the time of this order, Kertanis has had four (4) separate attorneys represent her in this action. In her motion, she challenges the actions of her first three attorneys, Attorney Cynthia Hahn ("Attorney Hahn"), Attorney Dennis Cameron ("Attorney Cameron"), and Attorney Richard Molezzo ("Attorney Molezzo").

[3] As a general rule, the amount of loss is the greater of either the actual loss or the intended loss to the victim. Commentary 3(A) to U.S.S.G. §2B1.1. Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense" while intended loss is the "pecuniary harm that was intended to result from the offense." Commentary 3(A)(i) and (ii) to U.S.S.G. §2B1.1. In a fraudulent loan application case, like here, the actual amount of loss is the amount of the loan not repaid at the time the offense is discovered. *United States v. Hicks*, 217 F.3d 1038, 1047 (9th Cir. 2000).

§2B1.1(b)(1). At sentencing, the court accepted both the $228,000 amount of loss calculation and the twelve-level enhancement. Neither Attorney Cameron nor Attorney Molezzo objected to the amount of loss.

Kertanis now contends that Attorney Cameron and Attorney Molezzo were constitutionally ineffective for failing to object to the amount of loss. Kertanis alleges that the amount of loss should have been calculated at $10,000 - correlating to only a two (2) level enhancement- because she was entitled to three separate reductions to the amount of loss calculation in the present report: (1) a reduction of $15,000 based on the amount of the fraudulently obtained funds immediately recovered by Wells Fargo; (2) a reduction of $180,000 based on the unforeseeable and intervening criminal conduct by her civil attorney, Attorney Douglas Fermoile ("Attorney Fermoile"); and (3) a reduction of $23,500 for return of a Toyota truck purchased with the fraudulently obtained monies. Kertanis contends that if counsel would have raised these objections at sentencing, she would have received a significantly reduced sentencing guideline range and sentence.

### 1. $15,000 Offset

Generally, loss under the sentencing guidelines does not include any amount the victim immediately recovers after discovering the crime by foreclosure, setoff, or repayment by the defendant. *See e.g., Hicks*, 217 F.3d at 1047; *United States v. Wright*, 60 F.3d 240, 241-42 (6th Cir. 1995); *United States v. Wells*, 127 F.3d 739, 748-49 (8th Cir. 1997).

Here, it is undisputed that Wells Fargo immediately recovered $15,000 by having Kertanis's account froze after it discovered the underlying fraudulent activity. Thus, Kertanis is correct that the amount of loss should have been reduced from $228,000 to $213,000 to reflect the amount that Wells Fargo immediately recovered. *See Hicks*, 217 F.3d at 1047. However, contrary to Kertanis's position, neither Attorney Cameron or Attorney Molezzo were constitutionally ineffective in failing to raise this objection to the court. *See Quintero-Barraza*, 78 F.3d at 1348 (holding that to establish constitutionally ineffective counsel, "but for counsel's unprofessional errors, the result of the proceeding would have been different."). A $213,000 amount of loss still corresponds with the

twelve-level enhancement Kertanis received at sentencing. *See* U.S.S.G. §2B1.1(b)(1)(G). Thus, regardless of counsels' failure to seek the $15,000 reduction, Kertanis's sentencing guideline range and sentence would have been the same.

### 2. $180,000 Offset

Kertanis also claims that her counsel was ineffective in failing to present sufficient declarations and documents establishing that an independent and unforeseeable intervening criminal act prevented Wells Fargo from recovering $180,000 of the fraudulently obtained money. Specifically, Kertanis argues that her civil attorney, Attorney Fermoile, embezzled $180,000 of the fraudulently obtained funds after she placed it in his trust account. Thus, she argues that this loss was independent of her own conduct and, as such, should not have been included in the amount of loss calculation.

Although it is true that "[n]ew losses inflicted independently by third-party criminals after the completion and discovery of a defendant's crime do not 'result from' that crime for purposes of the Sentencing Guidelines," *Hicks*, 217 F.3d at 1048, the court finds that Kertanis's argument that she is not responsible for the $180,000 loss is without merit. The $180,000 that Attorney Fermoile allegedly embezzled from Kertanis was not a "new loss" within the meaning of *Hicks* because at the time she transferred that money to Attorney Fermoile's trust account, the bank fraud had been completed and Wells Fargo had already experienced the loss of $228,000. Her subsequent attempt to hide $180,000 of the fraudulent proceeds by placing it with Attorney Fermoile, and the resulting disappearance of that money - whether it was embezzled or lost in bad investments - does not change Wells Fargo's amount of loss at the time the crime was discovered. *See* Commentary 3(A) to the U.S.S.G. §2B1.1.

Kertanis now contends that if Attorney Fermoile had not embezzled the money, Wells Fargo would have been able to recover that amount after discovering her crime and thus, she would be entitled to a $180,000 offset on her amount of loss calculation. *See* Doc. #114. However, even if this money was ultimately returned to Wells Fargo, she would not be entitled to an offset because it

occurred *after* Wells Fargo discovered the crime. *See* Commentary 3(E) to U.S.S.G. §2B1.1 (stating that a defendant is entitled to a credit against the amount of loss for any money returned to the victim *before* the offense was detected) (emphasis added). Therefore, the court finds that Attorney Cameron and Attorney Molezzo were not constitutionally ineffective for failing to raise this objection because it would not have resulted in a different sentencing calculation and sentence. *See Quintero-Barraza*, 78 F.3d at 1348.

### 3.  $23,500 Toyota

Finally, Kertanis argues that her counsel was ineffective for failing to seek a $23,500 reduction for the appraised value of a Toyota truck she purchased with the fraudulently obtained funds, but returned to Reno Toyota, who ultimately turned it over to Wells Fargo as part of a civil litigation settlement between those parties. *See* Doc. #114.

As addressed above, a defendant is entitled to a credit against the amount of loss for any money returned, including the fair market value of the property returned, by the defendant to the victim *before* the offense was detected. Commentary 3(E) to U.S.S.G. §2B1.1 (emphasis added). Here, Kertanis did not return the vehicle to Reno Toyota until *after* Wells Fargo discovered the crime. Thus, she was not entitled to a reduction in her amount of loss calculation. Accordingly, her counsel was not constitutionally ineffective for failing to raise this objection because it would not have resulted in a different sentencing calculation and sentence.

### B.  Failure to Provide 'Certified' Copies of Medical Records

Kertanis's second main argument is that Attorney Cameron and Attorney Melezzo were constitutionally ineffective in failing to obtain and present certified copies of Cameron's medical records in support of a downward departure request. *See* Doc. #114. The court disagrees.

Initially, the court notes that Attorney Cameron submitted medical records about Cameron's condition to the court as part of Kertanis's sentencing memorandum and argued for a downward departure in the same. *See* Doc. #72. In particular, Attorney Cameron submitted several letters from

Cameron's pediatric doctors, as well as an occupational therapy assessment, to support his argument that "Kertanis is vitally needed in the care of her seriously ill child." *Id.* p.4. Kertanis infers that because the letters were not "certified" the court must not have considered them in her sentencing because of her own prior fraud involving medical records.[4] However, at no point did the court question the medical records submitted by Attorney Cameron who had not perpetuated fraud upon the court. Rather, the court accepted the medical records and evaluated them in determining Kertanis's ultimate sentence. The court also accepted Attorney Molezzo's arguments at sentencing concerning Cameron's health and the need for a limited sentence so that Kertanis could take care of him. The fact that Kertanis now claims that her attorneys did not provide "enough documents" or that they were not "certified" does not establish ineffective assistance. Both Attorney Cameron and Attorney Molezzo provided information on Cameron's health to the court.

Even though Kertanis created false letters that were passed off as having been authored by health-care providers, the court has continuously considered Cameron's health and well-being in its decisions. For example, the court has extended Kertanis's self surrender date multiple times for Cameron's health issues. *See e.g.,* Doc. ##112, 124. Moreover, during sentencing, the court clearly indicated that it had taken into consideration the fact that Cameron was an "at risk child, with at risk problems" in considering Kertanis's sentence. Doc. #71, p.49. And the court even noted that it was "giving the family obligation the maximum credit" in its sentencing justification. *Id.* p.59-60. The inclusion of the additional medical records attached in Kertanis's § 2255 motion, and the claim that these documents are "certified," would not have swayed the court's decision in this matter. Accordingly, the court finds that Kertanis's counsel was not constitutionally ineffective in this regard.

---

[4] During the initial stages of this case and while seeking a continuance, Kertanis prepared false documents regarding the medical condition of Cameron. Attorney Hahn submitted these documents to the court, which ultimately caused an investigation into the documents and determined there falsity. As a result of this fraud upon the court, Kertanis received a two-level enhancement for obstruction of justice.

7

### C. Failure to File Motion to Dismiss Venue

In her third argument, Kertanis argues that Attorney Hahn and Attorney Cameron were constitutionally ineffective for failing to file a motion to dismiss based upon lack of venue. Kertanis contends that both the aggravated identify theft charge of Count 2 and the underlying bank fraud charge occurred solely in Connecticut. As such, she argues that only the District of Connecticut had jurisdiction and venue over both charges. The court disagrees.

Under Rule 18 of the Federal Rules of Criminal Procedure, a prosecution must be conducted in the district in which the offense was committed. FED. R. CRIM. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in the district where the offense was committed."). "[W]here the acts constituting the crime and the nature of the crime charged implicate more than one location, venue is constitutionally permissible in more than one district." *United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985).

"[T]he appropriate test to apply in determining whether venue is constitutionally permissible in this district is the 'substantial contacts' test set forth by the Second Circuit in *United States v. Reed*, 773 F.2d 477 (2d Cir. 1985). The ultimate question of whether venue is proper in any particular case depends on the nature of the crime charged and the location of the acts that constitute the crime." *United States v. Bezmalinovic*, 962 F. Supp. 435, 437 (S.D. NY 1997). In criminal prosecutions involving banking transactions, venue is proper in the district where funds are received. *See United States v. Angotti*, 105 F.3d 539, 544 (9th Cir. 1997).

Here, Kertanis admitted, in both her signed plea agreement and her testimony before the court at her change of plea hearing, that she had opened a U.S. Bank account in Reno, Nevada and that Wells Fargo deposited $228,000 from her fraudulent activity into that account. Doc. #65, p.7; Doc. #71, p.31. Further, Kertanis admitted contacting a Wells Fargo loan representative by phone from Reno, Nevada, and receiving and mailing a loan documentation package at a Reno, Nevada address. Doc. #65, p.8-9; Doc. #71, p.30. Finally, Kertanis admitted using the services of Peggy

8

Hoffman, a U.S. Bank notary in Reno, Nevada during the course of her fraudulent activity. Doc. #65, p. 8; Doc. #71, p.312.

The court finds that these actions are not simply ministerial activities as Kertanis now claims, but are substantial conduct that contributed to the ultimate success of her crimes. As such, the court finds that venue for the prosecution of these crimes was proper in the District of Nevada. Therefore, neither Attorney Hahn nor Attorney Cameron were constitutionally ineffective for failing to file a motion that was without merit.

### D. Failure to Seek Acceptance of Responsibility Downward Adjustment

In her fourth argument, Kertanis argues that Attorney Molezzo was constitutionally ineffective in failing to seek an acceptance of responsibility reduction. *See* Doc. #114.

The court has reviewed the documents and pleadings on file in this matter and finds that Kertanis's argument is without merit. First, it is undisputed that Attorney Molezzo requested the acceptance of responsibility reduction. *See* Doc. #89. Thus, Attorney Molezzo was not ineffective because he sought the challenged reduction.

Second, the court considered and denied Attorney Molezzo's request for an acceptance of responsibility reduction. At sentencing, the court rejected the request because Kertanis committed additional offenses subsequent to indictment; filed forged documents with the court; has since attempted to withdraw her guilty plea; continues to claim that she is not responsible for the loss caused to Wells Fargo; and has been uncooperative on occasion while under supervision. *See* Doc. #89, p.46-49. Based on this conduct, the court found that "this is not an acceptance of responsibility case," and that "[i]t would be an insult to our criminal justice system for [Kertanis] to receive a sentencing break based upon acceptance of responsibility in light of what this history has been." Doc. #89, p.53. Therefore, based upon this record, the court finds that Attorney Molezzo was not ineffective at sentencing in seeking an acceptance of responsibility reduction.

///

### E. Involuntary Plea

Kertanis's final argument is that she did not enter a knowing and voluntary guilty plea to 18 U.S.C. § 1028A, to the extent that she knowingly pled guilty to a charge that carried a mandatory minimum sentence of two (2) years consecutive to any other sentence to be imposed. Further, Kartanis alleges that she did not admit it to violating bank fraud - one of the predicate crimes for aggravated identity theft - because she did not intend to expose Wells Fargo to loss.

The court has reviewed the documents and pleadings on file in this matter and finds that Kertanis's claim that she did not enter a knowing and voluntary plea is without merit and refuted by her signed plea agreement and her testimony at the plea hearing. In her signed plea agreement, Kertanis acknowledged that "18 U.S.C. § 1028A requires a mandatory consecutive 2 year term of imprisonment and does not allow for a sentence of probation;" that she acted "with the intent to defraud" Wells Fargo as required under the essential elements of bank fraud, regardless of whether she actually intended to expose Wells Fargo to a loss; that she spent or transferred significant portions of the fraudulently obtained monies; and that she had "thoroughly read and reviewed this memorandum with [her] attorney and [agreed] this memorandum completely and accurately states the facts supporting [her] guilty plea." Doc. 65. The court also recognizes that the signed plea agreement sets forth all the elements of aggravated identity theft, including the underlying essential elements of bank fraud, and that Kertanis agreed that she had violated all of them. *Id.*

Similarly, at her plea hearing, Kertanis specifically testified that she was able to read the plea agreement, fully understood each of the counts charged against her to which she was pleading guilty, and was able to discuss the charges in detail with Attorney Cameron. *See* Doc. #71, p.8. After which the court explained that the offense of aggravated identity theft was made up of three essential elements, of which the three essential elements of bank fraud are a core part. *Id.* p.10. The court proceeded to explain each essential element of both aggravated identify theft and bank fraud, and asked Kertanis if she understood each of those essential elements, to which she replied "yes."

*Id.* p.11. Kertanis also testified she understood that as she was entering a guilty plea to those charges, she would also be admitting to each of those essential elements, including bank fraud's element of intent to defraud, and that the underlying facts as they applied to her were true. *Id.* Further, she testified that she was pleading guilty to Count 2 because "in truth and fact" she was guilty.

      Additionally, the court directly asked Kertanis if she understood that the offense of aggravated identity theft required a "mandatory consecutive two-year term of imprisonment and will not allow for probation of any kind" to which she testified "I do." Thus, based on the entire canvas, including the extensive factual history of the fraudulent activities that she admitted too, the court found that her guilty plea "to each of the two charges is a knowing and voluntary plea, supported by an independent factual basis contained each one of the essential elements of each offense." Doc. #71, p.35. Based on this record, the court finds that Kertanis was fully apprised of the essential elements of aggravated identity theft, including the essential elements of the underlying predicate crime of bank fraud, and that aggravated identity theft had a 2 year mandatory consecutive sentencing. Therefore, the court finds that Kertanis made a knowing and voluntary plea to Count 2. Accordingly the court shall deny her motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.

///
///
///
///
///
///
///
///

IT IS THEREFORE ORDERED that defendant's amended motion to vacate or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. #114) is DENIED.

IT IS FURTHER ORDERED that defendant's initial motion to vacate or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. #93) is DENIED as moot.

IT IS SO ORDERED.

DATED this 31st day of October, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE